## OILWELL EXPRESS CORPORATION v. RAILROAD COMMISSION OF CALIFORNIA et al.

No. 493.

District Court, S. D. California, C. D.
July 29, 1935.

Leland Bower, of Los Angeles, Cal., for plaintiff.

U. S. Webb, Atty. Gen., and Ira H. Rowell, of San Francisco, Cal., for defendants.

Before WILBUR, Circuit Judge, and McCORMICK and HOLLZER, District Judges.

PER CURIAM.

This is a suit in equity to restrain the Railroad Commission of the state of California from enforcing a certain order of said commission, made under date of November 5, 1934, directing the complainant and several others to cease and desist from operating as a transportation company, unless and until a certificate of public con-

venience and necessity authorizing the same shall have been secured. Plaintiff alone seeks to prevent the enforcement of this order.

Complainant's motion for an injunction pendente lite and likewise the cause upon the merits have been submitted upon the pleadings, the affidavits filed on behalf of the respective parties, and the record of the proceedings which were had before said commission.

Complainant contends that the commission, disregarding the evidence showing plaintiff to be a private carrier, arbitrarily found that it was operating as a transportation company with common carrier status, as defined in subdivision (c) of section 1 of the Auto Truck Transportation Act (chapter 213, St. 1917, p. 330, as amended by St. 1929, p. 1895).

Neither the constitutionality of the act mentioned, nor the power of the commission to issue an order of the character involved herein is questioned. Section 1 (c) provides in part as follows: "The term 'transportation company' when used in this act, means every corporation or person, * * * owning, controlling, operating or managing, any auto truck used in the business of transportation of property, or as a common carrier of property, for compensation, over any public highway in this state between fixed termini or over a regular route, and not operating exclusively within the limits of an incorporated city or town or of a city and county. * * *"

Section 1 (e) of the same act declares in part as follows: "The words 'between fixed termini or over a regular route,' when used in this act, mean the termini or route between or over which any transportation company usually or ordinarily operates any auto truck even though there may be departures from said termini or route, whether such departures be periodic or irregular. * * *"

Obviously, unless it can be shown that the findings rendered by the commission are without support in the record, there is no basis for seeking the interposition of this court. The burden of establishing such contention clearly rests upon complainant.

The primary question before us, therefore, is whether the record, upon which the commission reached its conclusions, contains any evidence tending to establish that complainant, during the period involved herein, was operating as a transportation company with common carrier status within the meaning of the statute above mentioned.

The order here under attack was made by the commission after an extended hearing wherein about forty-two witnesses testified and a considerable number of documents were introduced in evidence.

As disclosed by the affidavit of the secretary of the commission and the exhibits attached thereto, the activities of one E. R. Ball, who appears to have been the dominating factor in plaintiff's enterprise, have been the subject of inquiry before the commission in at least four proceedings, the earliest in April, 1931.

In the first case, the commission found that Ball and an associate were operating a common carrier service, in the same territory involved in the present suit, under the name of "Oil Well Express" without the requisite certificate, and ordered them to desist. In that decision, the commission found that Ball was the chief owner of a concern which it had theretofore ordered to cease operating as a common carrier in the same territory and that Ball had merely given a different name to his new operations.

In April, 1932, Ball was adjudged guilty of contempt for disobeying the commission's order to cease and desist made in the previous year. In this contempt proceeding, Ball testified before the commission that he had been advised that "we could make any contract we wanted to, as long as the other party signed it." The Supreme Court of California refused to annul this contempt judgment. Ball v. Railroad Commission, 15 P.(2d) 862.

Thereafter a petition by Ball for writ of habeas corpus was denied by the California District Court of Appeal. In re Ball, 127 Cal. App. 433, 15 P.(2d) 862. In the course of its opinion, the latter court said: "* * * It is alleged in the petition that petitioner was not engaged in that business as a common carrier, but only as a private carrier. However, it was found by the commission that the petitioner has 'continued to operate and conduct the business of operating automobile trucks for the transportation of property as a common carrier, for compensation, over the public highways of this state, and specifically between Los Angeles and contiguous territory, on the one hand, and certain oil fields in the San Joaquin valley, on the other hand, between September 15 and December 31, 1931, inclusive, and subsequent thereto.'

It is to be noted in this connection that the Supreme Court of California denied the petition of E. R. Ball for a writ of certiorari to review the action of the commission in punishing him for this contempt. * * * Since petitioner's entire argument is built upon the assumed foundation that he was operating as a private carrier, nothing further remains to be said."

In May, 1934, Ball was a second time adjudged in contempt for violating the commission's 1931 order. In this later decision, the commission found that Ball had resumed his illegal operations, using various subterfuges to mask his continued management of such activities, including organizing the corporation which is the complainant herein and also an association under the name of Pacific Shippers Association, the latter being one of the respondents in the proceedings here sought to be annulled. The commission, in that case, adjudged Ball guilty of five separate contempts. Four of these involved shipments made in January 1934, and the fifth in the following month. Some, if not all, of these transactions were conducted under the name of complainant herein.

Thereafter, Ball applied to the Supreme Court of California to set aside the commission's decision, but that tribunal refused to interfere. In December of the same year, the District Court of Appeal of that state refused for the second time, to release him on habeas corpus. In re Ball, 2 Cal.App.(2d) 578, 38 P.(2d) 411.

The proceedings which resulted in the order we are asked to adjudge void were based upon complaints charging the complainant herein, also Ball and his associates, with conducting common carrier operations between Los Angeles and San Joaquin valley points, being the same territory wherein, according to the prior decisions of the commission, he had been carrying on similar activities since 1930.

A considerable portion of the evidence introduced before the commission consisted of testimony given by the respective officials of many mercantile concerns to the effect that their firms had used the facilities of the complainant in shipping merchandise from Los Angeles to points in the territory mentioned during the years 1932, 1933, and 1934. Among other matters, this testimony disclosed that shipments had been made to this territory over the plaintiff's facilities, on the dates and by the firms hereinafter specified, to wit: January 11, 1934, Security Engineering Company; January 11, 1934, Globe Oil Tools Company; January 11, 1934, Patterson-Ballagh Corporation; January 11, 1934, National Supply Company; January 15, 1934, Stoody Company; January 15, 1934, Southern Steel & Supply Company; January 29, 1934, National Supply Company; February 2, 1934, National Supply Company.

The evidence further showed that the plaintiff, since its incorporation in May, 1932, had been transporting freight for a number of concerns with which it had no contract. In one instance, a purported agreement had been executed by the shipper about one week prior to the hearing in the last contempt proceeding above mentioned, although this firm had been shipping over complainant's facilities for many months prior to such hearing.

In addition, the evidence presented before the commission disclosed that the plaintiff had been incorporated by employees of Ball; that no stock had ever been issued; that its president, Mrs. Mikesell, was employed as a bookkeeper at a salary ranging from $60 to $100 per month, and that she was virtually unknown to the shippers; that its secretary, Mr. Futhey, was paid from $140 to $165 per month, depending upon the number of hours he worked, and that but few of the shippers had ever contacted him; that Ball had signed all checks and virtually managed the plaintiff's enterprise up to July 1, 1934, and had drawn out $200 per month; that, although the gross revenue of plaintiff's business from January to September, 1932, had averaged $6,000 per month, no dividends or profits had been distributed or were available, and no satisfactory accounting was given as to what became of a substantial portion of such revenue; that the address and telephone number of plaintiff's place of business was the same as that of all the other concerns which Ball had operated as common carriers since 1930; that there had been no interruption in the transportation service rendered by complainant since its incorporation; that the rates charged by plaintiff had been changed without the consent of the shippers; that frequently shipments had been sent collect; and that many of the bills of lading used for making shipments were identical with the form in use by common carriers who were subject to the jurisdiction of the Interstate Commerce Commission, while others were

the regular railroad standard bills of lading.

In its decision rendered May, 1934, the commission had found that Ball had been conducting common carrier operations through the instrumentality of the plaintiff corporation in making the shipments hereinbefore specifically enumerated, and that these very same activities constituted separate contempts of the commission's cease and desist order issued in April, 1931. The Supreme Court of California, as heretofore noted, had refused to disturb those findings.

As pointed out in the case of Napa Valley Company v. Railroad Commission, 251 U. S. 366, 372, 40 S. Ct. 174, 64 L. Ed. 310, such decision of the highest court in the state was tantamount to a decision by that tribunal that the orders and decisions of the commission did not exceed its authority or violate any right of the complainant under the Constitution of the United States or of the state of California. Such decision was necessarily a final judicial determination based upon the identical rights asserted in that court and repeated here. To the same effect, see Betts v. Railroad Commission (D. C.) 6 F. Supp. 591, affirmed in 291 U. S. 652, 54 S. Ct. 563, 78 L. Ed. 1046 and cases therein cited.

The application for an injunction is therefore denied and the cause is ordered dismissed.